IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | NO. 24-274 |
| KEITH WYNN | : | |

**Perez, J.**                                                                     **November 4, 2025**

## MEMORANDUM

The government moves for reconsideration of the Court's September 19, 2025 memorandum and order (ECF 59 and 60) granting Defendant Keith Wynn's motion to suppress. It advances two principal arguments: (1) that the Court should revisit its credibility determination regarding Officer Wildsmith, and (2) that even if the initial seizure was unlawful, the firearm and ammunition should not have been suppressed because Wynn's alleged outstanding warrants attenuated the connection between any illegality and the recovered evidence. Having failed to meet its burden on the existing record, the government now seeks a second opportunity to present evidence it elected not to introduce at the suppression hearing. But, it is not the Court's role to make the government's case for it, nor may reconsideration be used to remedy evidentiary failures or to relitigate credibility findings. The record was complete when the government rested, and it must stand on that record. For the reasons below, the motion will be denied.

    I.       **Procedural Background and Prior Findings**

The Court incorporates by reference the factual findings and legal conclusions set forth in its Memorandum Opinion dated September 19, 2025 (ECF No. 59), granting Defendant Keith Wynn's motion to suppress. Those findings followed two evidentiary hearings held on June 17 and July 16, 2025, after the Court permitted supplemental development of the record to include

1

previously undisclosed dash-camera footage. In that decision, the Court concluded that the government failed to establish a lawful basis for the initial stop and seizure of Wynn, and that the evidence obtained therefrom—including the firearm and ammunition—must be suppressed under the Fourth Amendment. The Court's ruling rested largely on its determination that the testimony of Officer Mark Wildsmith, who initiated the stop, was not credible. The dash-camera footage did not corroborate his account of any traffic violation, nor did it support his assertions about observing "aggressive movements" by the passenger or smelling marijuana. The government presented no other reliable evidence of a traffic infraction, and no citation was issued. The Court thus found that the seizure was unlawful from its inception.

The government argued that any taint was cured under the attenuation doctrine of *Utah v. Strieff*, 579 U.S. 232 (2016), based on Wynn's alleged outstanding warrants. The Court declined to address that argument on the merits, noting that the government raised it for the first time in post-hearing briefing—after the record had closed and despite the Court's order limiting supplemental submissions to standing—and that the record was devoid of competent evidence establishing the existence or validity of any such warrants. The Court also did not reach Wynn's alternative claim under *Rodriguez v. United States*, 575 U.S. 348 (2015), which challenged the prolongation of the stop, because it had already found the stop itself unconstitutional.

## II. Standard for Reconsideration

Reconsideration is an extraordinary remedy that must be granted sparingly. *Williams v. City of Pittsburgh,* 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). The moving party must show: (1) an intervening change in controlling law; (2) the availability of new evidence that could not previously have been presented; or (3) the need to correct a clear error of law or fact or prevent manifest injustice. *Max's Seafood Café v. Quinteros*,

176 F.3d 669, 677 (3d Cir. 1999). A motion for reconsideration is not an occasion to rehash arguments that have already been considered and rejected. *See e.g., Waye v. First Citizen's Nat. Bank*, 846 F.Supp. 310, 314 (M.D.Pa.1994); *United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

The Federal Rules of Criminal Procedure do not expressly provide for motions for reconsideration, particularly those filed by the Government. However, Local Rule of Criminal Procedure 1.2 incorporates Local Rule of Civil Procedure 7.1(g) for use in criminal matters. Rule 7.1(g) provides that "[m]otions for reconsideration or reargument shall be served and filed within ten (10) days after the entry of the judgment, order, or decree concerned." In the absence of specific guidance in the criminal rules, courts look to the jurisprudence developed under Federal Rule of Civil Procedure 59(e). *United States v. Newmark*, No. 06-447-1, 2008 WL 2165093, at *1 (E.D. Pa. 2008); *United States v. Lee*, 82 F. Supp. 2d 389, 390 (E.D. Pa. 2000); *Rankin v. Heckler*, 761 F.2d 936, 942 (3d Cir. 1985). The purpose of a Rule 59(e) motion is to correct manifest errors of law or fact or to present newly discovered evidence. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).

### III.    The Court Will Not Reconsider Its Credibility Determination

The government devotes substantial portions of its motion to contesting the Court's adverse credibility finding as to Officer Wildsmith, urging that the ruling could have repercussions for his career and professional reputation. While the Court appreciates those concerns, they do not provide a legal basis for altering a credibility determination reached after live testimony, cross-examination, and full evidentiary presentation.

3

Credibility determinations are the core function of a trial court sitting as factfinder.[1] The Court did not undertake that obligation lightly. It carefully reviewed the testimony, body-worn-camera footage, and other exhibits, and it found Officer Wildsmith's account inconsistent with the objective evidence of the encounter. Those findings were supported by the record and were essential to the Fourth Amendment analysis. The potential professional or reputational consequences of a credibility finding, while unfortunate, cannot alter the Court's constitutional responsibility to assess the evidence impartially. The government identifies no newly discovered evidence, no misstatement of fact, and no legal error warranting reconsideration. The Court therefore declines to revisit its credibility determinations.

### IV. The Court Declines to Reopen the Record

The government seeks to re-address its attenuation theory premised on alleged outstanding warrants. That argument was not presented in the government's opposition to the motion to suppress or at either evidentiary hearing. It appeared only in the government's August 4, 2025 post-hearing brief—after the Court had explicitly limited additional briefing to the issue of standing. The government urges the Court to reopen the evidentiary record to allow it to introduce documentation of Wynn's alleged outstanding arrest and probation warrants, or, alternatively, to take judicial notice of those warrants. The Court declines to do so.

The government made a deliberate choice to rely solely on Officer Wildsmith's testimony and now seeks, after an adverse credibility finding, a second opportunity to supply evidence it could have produced all along. That is precisely what a motion for reconsideration may not be used

---

[1] Such credibility determinations are subject to clear error review. "Clear error exists when, giving all deference to the opportunity of the trial judge to evaluate the credibility of witnesses and to weigh the evidence. . . [there is a] definite and firm conviction that a mistake has been committed." *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182 (3d Cir. 2010) (internal citation omitted). Furthermore, such "review is more deferential with respect to determinations about the credibility of witnesses[.]" *United States v. Igbonwa*, 120 F.3d 437, 441 (3d Cir. 1997).

to accomplish. *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). The Court's duty is to adjudicate the record that was made, not to reconstruct one that might have been more favorable to the prosecution. Having failed to carry its burden at the suppression hearing, the government is not entitled to a do-over.

The government's explanation—that it "credited Officer Wildsmith's testimony" and therefore did not introduce the warrants earlier—does not justify reopening the record or admitting new evidence at this stage. It is not the Court's role to rescue a party from its own strategic or evidentiary decisions. The Federal Rules of Criminal Procedure assign to the government the burden of presenting competent proof in its case-in-chief; that responsibility cannot be shifted to the Court once the record has closed. *See* Fed. R. Crim. P. 12(d), 47; *United States v. Trant*, 924 F.3d 83, 88 (3d Cir. 2019). The government's reliance on *United States v. Trant* is misplaced. *Trant* addressed the standard for reopening the record during a criminal trial, not after an evidentiary hearing on a motion to suppress. As the Third Circuit expressly noted, the "restraint on reopening [that] applies to motions to reopen a suppression hearing." *Id.* at 89. There, the government sought to reopen its case before the defendant presented any evidence, and the reopening caused no prejudice or disruption to the proceedings. *Id.* at 90. The circumstances here are entirely different: the suppression record is closed, the government had a full and fair opportunity to present its case, and it offers no newly discovered evidence or good cause for its omission. The discretion to reopen in *Trant* therefore has no application in the post-hearing context of this case.

Under Federal Rule of Criminal Procedure 12(b)(3)(C), a motion to suppress must be raised before trial, and the accompanying Rule 12(c)(1) authorizes the Court to set a deadline for such motions. Any argument, defense, or objection not raised by that deadline is waived unless the party demonstrates "good cause." Fed. R. Crim. P. 12(c)(3). Here, the Court established a clear timeline

5

for suppression litigation and later limited post-hearing briefing to the discrete issue of standing. The government did not raise its attenuation theory or offer any warrant documentation during the evidentiary phase, even though the existence of those warrants was a matter within its knowledge and control. Having failed to present that evidence when the record was open, the government cannot now invoke Rule 12(c)(3) to reopen the case merely because the Court found its existing evidence insufficient. Nor does Federal Rule of Criminal Procedure 47, which governs the form of motions, provide an independent basis to reopen a suppression record. The rule sets procedural requirements but does not authorize post hoc supplementation after evidentiary closure. Rule 12 deadlines are not advisory and district courts act well within their discretion to enforce them *See United States v. Dupree*, 617 F.3d 724, 732 (3d Cir. 2010).

The government alternatively urges the Court to take judicial notice of the alleged warrants under Federal Rule of Evidence 201. That request fails for multiple reasons. Judicial notice is reserved for facts "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The government has not provided any such indisputable materials—only its bare assertion that the warrants existed. Even if certified copies are now submitted, the Court could not take notice of them without first reopening the evidentiary record, which it declines to do. The validity, timing, and discovery of the alleged warrants are inherently fact-bound questions, not the type of adjudicative facts properly noticed under Rule 201. Allowing judicial notice at this stage would also circumvent the procedural safeguards of Rule 12, deny the defendant an opportunity for cross-examination, and effectively permit the government to supplement the record after the fact—contrary to the purpose of both the suppression process and the reconsideration standard.

Because the Court's suppression hearing provided the government a full and fair opportunity to present its evidence, reopening the record now would amount to giving the government a second chance to patch up holes in its case. *United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000). The government has not shown diligence, newly discovered evidence, or any other equitable basis to disturb the finality of the suppression record. Reconsideration under *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999), requires an intervening change in law, newly discovered evidence, or the need to correct a clear error. The government's proffered warrant information is neither new nor newly discovered; it was plainly available at the time of the suppression hearing. The Court's prior ruling did not rest on an erroneous view of law but on the absence of competent proof in the record. The Court therefore declines to reopen the evidentiary record or take judicial notice of the alleged warrants.

## V.     Attenuation Fails on the Merits[2]

The government's invocation of the attenuation doctrine is ill-suited for this record. The doctrine presupposes a conceded or established Fourth Amendment violation; it asks whether the connection between that illegality and the discovery of evidence has been sufficiently interrupted to dissipate the taint. *Brown v. Illinois*, 422 U.S. 590, 603–04 (1975). Yet the government continues to dispute the illegality of the stop and the Court's credibility findings that led to suppression. Its inconsistent posture—denying the violation while invoking a doctrine that requires

---

[2] The Court notes that Defendant previously argued the stop was unlawfully prolonged under *Rodriguez v. United States*, 575 U.S. 348 (2015). The Court did not reach that issue in its prior ruling because it found the initial stop unlawful from inception. Nothing in this Memorandum should be construed as revisiting or resolving the *Rodriguez* argument on the merits. To the contrary, if the stop was also impermissibly extended pursuant to *Rodriguez*, that would only underscore the continuous and unbroken nature of the constitutional violation, further confirming that no meaningful break occurred to purge the taint. In *Utah v. Strieff*, 579 U.S. 232 (2016) the officer's "decision to initiate the stop was mistaken, [but] his conduct thereafter was lawful." *Id.* at 241. Here, by contrast, if the stop was unlawfully prolonged, then the illegality persisted throughout the encounter. If a seizure is both unlawful from inception and unlawfully extended, the government's burden to show attenuation is particularly heavy.

it—reveals the weakness of its position. More fundamentally, attenuation cannot rescue the government where the very evidence it relies on to show dissipation of the taint was itself the product of the unlawful stop. Even if the Court were to reopen the record or take judicial notice of the alleged warrants, the government's theory would still fail. Accepting *arguendo* that valid arrest and probation warrants for Wynn existed at the time of the stop, the totality of the circumstances does not establish that the discovery of the firearm and ammunition was sufficiently attenuated from the unlawful seizure to purge the taint.

The exclusionary rule generally requires suppression of evidence derived from an unconstitutional search or seizure. *Wong Sun v. United States*, 371 U.S. 471 (1963). The attenuation doctrine is a narrow exception, *id.*, which "mark[s] the point at which the detrimental consequences of illegal police action become so attenuated that the deterrent effect of the exclusionary rule no longer justifies its cost." *Brown*, 422 U.S. at 609 (Powell, J., concurring in part). This tipping point depends heavily on the facts of the matter at hand. *See United States v. Fox,* 600 F.3d 1253, 1260 (10th Cir. 2010) (acknowledging that the "analysis is fact-intensive."); *United States v. Conrad,* No. 10–2001, 2012 WL 833741, at *5 (7th Cir. Mar. 14, 2012). Courts assess attenuation under three factors: (1) the temporal proximity between the illegality and the discovery of the evidence; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *Brown* at 603–04; *Utah v. Strieff*, 579 U.S. 232, 238 (2016). The government bears the burden of proving attenuation by a preponderance of the evidence. *Brown*, 422 U.S. at 604; *Kaupp v. Texas*, 538 U.S. 626, 632–33 (2003); *United States v. Pelullo*, 173 F.3d 131, 137–38 (3d Cir. 1999). It did not carry that burden here.

The first *Brown* factor—the temporal proximity between the unlawful stop and the discovery of the firearm—strongly favors suppression. The events here unfolded in one continuous

chain. After initiating the stop without reasonable suspicion or probable cause, Officer Wildsmith immediately engaged both occupants, questioned the driver and Wynn, ordered Wynn from the vehicle, and conducted a frisk within minutes. The firearm was discovered almost immediately thereafter, following a search of Wynn's person and the vehicle that flowed directly from the same initial seizure. The dash-camera and body-worn camera footage confirm that there was no meaningful temporal or spatial break in this sequence: the officers never paused their investigation, and the encounter never lost its character as a single, uninterrupted detention. In *Brown v. Illinois*, the Supreme Court held that even several hours between the illegal act and discovery of evidence weighed against attenuation; here, the entire series of events—from the unlawful stop to the firearm's recovery—occurred in mere minutes. The causal chain was immediate and unbroken, leaving no interval in which the taint could have dissipated

      The government argues that the alleged existence of valid, preexisting warrants constitutes an intervening circumstance under *Strieff*. That comparison is unavailing. In *Strieff*, attenuation applied because the officer, after an unlawful but brief stop, discovered a verified, preexisting, and untainted arrest warrant through a routine database check. 579 U.S. at 240–41. The Court deemed that warrant an "independent intervening circumstance" because it was valid, preexisting, and entirely unconnected to the stop. *Id.* Here, to start, the government produced no competent evidence that any such warrants existed, much less that their discovery was independent of the illegal detention. At the suppression hearing, it presented only Officer Wildsmith's discredited testimony and no documentation—no warrant printouts, dispatch logs, or court records. Even assuming such warrants could now be shown to exist, their discovery was the *direct product* of the unlawful stop: the officers would never have run Wynn's name or learned of the warrants but for

9

the unconstitutional detention. The alleged intervening circumstance was thus not independent—it was generated by the very illegality the government seeks to purge.

The third *Brown* factor—the purpose and flagrancy of the violation—is particularly significant. *Brown*, 422 U.S. at 604; *Strieff*, 579 U.S. at 239. The Court's prior findings compel the conclusion that this factor weighs heavily against the government. Unlike in *Strieff*, Officer Wildsmith's actions cannot be described as the product of a good-faith mistake. In *Strieff*, the Supreme Court emphasized that the officer was "at most negligent," having made two errors in judgment while attempting to gather information about a suspected drug house. *579* U.S. at 241. His decision to stop Strieff was mistaken, but his purpose was investigative, and "his conduct thereafter was lawful." *Id.* Here, by contrast, the Court found that Officer Wildsmith initiated a stop with no objective basis; his actions were not the product of momentary confusion or imprecise judgment, but of a deliberate decision to proceed without legal cause. This is the precise type of conduct the exclusionary rule is designed to deter. *See Brown*, 422 U.S. at 604–05; *United States v. Mosley*, 454 F.3d 249, 252–53 (3d Cir. 2006) (suppressing evidence where unlawful stop led directly to discovery of contraband).

The Court cannot disregard its own factual and credibility determinations to accommodate the government's shifting theory. The causal chain that was broken in *Strieff* remains intact here: the alleged warrant discovery, the arrest, and the firearm were all direct products of the unconstitutional seizure. The government bore the burden of demonstrating that the discovery of the evidence was sufficiently remote or interrupted to dissipate the taint, and it failed to do so. The attenuation doctrine does not excuse evidence obtained through a continuous, unbroken chain of unconstitutional conduct.

10

The government's explanation for its failure to present the alleged warrants—namely, that it "credited Officer Wildsmith's testimony" and therefore deemed the warrants unnecessary—does not alter the attenuation analysis. That explanation underscores the problem, rather than cures it. The government made a strategic choice to rely exclusively on Wildsmith's account, to forego documentary corroboration, and to close the evidentiary record on that basis. Having chosen that course, and after the Court declined to adopt the government's view of the evidence, it may not now seek to reopen the record or reframe its case through reconsideration. The government's belated invocation of the warrants is not an "intervening circumstance" under *Brown*; it is an after-the-fact attempt to rehabilitate an unlawful stop through evidence never introduced. The attenuation doctrine requires an independent, verified event that breaks the causal chain. The government's decision to omit that evidence—based on its own misplaced confidence in testimony the Court has found unreliable—demonstrates that no such intervening event was proven. The Court cannot infer attenuation from evidence the government chose not to present, nor can it rewrite the record to fill those gaps.

As the Third Circuit has made clear, the Court's role is to adjudicate the record before it, not to reconstruct a stronger case for the prosecution after the fact. *See United States v. Kithcart*, 218 F.3d 213, 219 (3d Cir. 2000) The government's decision to rely exclusively on Wildsmith's testimony, coupled with its failure to produce competent corroborating evidence, forecloses both reopening the record and any finding of attenuation on the merits. The exclusionary rule exists precisely to prevent this kind of iterative justification for unconstitutional conduct.

## VI.     CONCLUSION

The government has not shown any change in law, new evidence, or clear error warranting reconsideration. The Court's credibility findings remain fully supported by the record. The

government's attenuation argument is untimely, unsupported by evidence, and unpersuasive even on the merits. Accordingly, the motion for reconsideration is denied.